UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBYN D. CARMICHAEL, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br>vs.<br><br>JPMORGAN CHASE & CO.,<br><br>      Defendant. | Case No. |

# CLASS ACTION COMPLAINT

Plaintiff Robyn D. Carmichael ("Plaintiff"), individually and on behalf of the Class defined below of similarly situated persons, alleges the following against JPMorgan Chase & Co. ("JPM" or "Defendant"), based upon personal knowledge with respect to himself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## NATURE OF THE ACTION

1. It is both unfair and unlawful for entities like JPM to impose punitive health insurance surcharges, and surcharges on other insurance programs like long-term disability, supplemental term life, and individual disability insurance, on employees who use tobacco products.

2. This lawsuit challenges Defendant's practice of charging a "tobacco surcharge" that unjustly forces certain employees to pay higher premiums for their health and other insurances provided by Defendant. Such surcharges violate the Employee Retirement Income Security Act

1

("ERISA") and its anti-discrimination provisions by unfairly targeting employees based on their health status, such as tobacco use.

3.      Tobacco surcharges have become more prevalent in recent years, but to be lawful, they must adhere to specific rules set forth by ERISA and related regulations. These rules mandate that employers cannot charge extra fees based on tobacco use unless those fees are part of a compliant wellness program that offers a reasonable alternative standard to all participants. While ERISA allows for wellness programs that incentivize healthy behavior, these programs must meet strict criteria.

4.      First, wellness programs must genuinely promote health, not merely serve as a revenue generator. Second, the program must provide a "reasonable alternative standard" to individuals for whom it is difficult to meet the initial health or other insurance requirements, such as quitting tobacco use. This reasonable alternative could include participation in a smoking cessation program, through which participants can avoid the tobacco surcharge for the entire plan year. Most importantly, employers must clearly communicate the availability of this alternative standard in all relevant plan materials.

5.      However, the JPMorgan Chase Healthcare and Insurance Program for Active Employees (the "JPM Plan" or "Plan") does not provide the required reasonable alternative standard, and even if it did, Defendant has failed to adequately notify employees about the availability of such an alternative that would enable employees to avoid the surcharge for the entire year in all its plan communications. Consequently, Defendant's tobacco surcharge violates ERISA's anti-discrimination provisions by imposing additional costs on employees who use tobacco products without meeting the legal requirements for a bona fide wellness program.

6.      Plaintiff Carmichael was an employee of JPM for three years and was required to pay the tobacco surcharge to maintain health and other insurance coverages under the Plan since

2

at least 2020. The surcharge has imposed an additional financial burden on him and other similarly situated employees, despite JPM's failure to comply with the legal requirements for wellness programs under ERISA.

7. Plaintiff brings this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover the unlawfully charged tobacco surcharges and to obtain plan-wide equitable relief to prevent JPM from continuing to collect these improper fees in violation of ERISA. Under 29 U.S.C. § 1109 and 1132(a)(2), JPM, as a fiduciary of the Plan, has a legal obligation to act in the best interests of its participants and to comply with federal law. Plaintiff also seeks appropriate equitable relief under 29 U.S.C. § 1132(a)(3) to address Defendant's ongoing violations of ERISA's anti-discrimination provisions.

**PARTIES**

8. Plaintiff Robyn D. Carmichael is, and at all times mentioned herein was, an individual citizen of the State of California residing in Los Angeles County. Mr. Carmichael was an employee of JPM who paid the tobacco surcharge in the form of additional premiums associated with both health and other insurance policies offered through his employer during the applicable limitations period.

9. Plaintiff Carmichael was a participant in the Plan pursuant to 29 U.S.C. § 1102(7) during the Class Period.

10. JPM is a global financial services firm that provides banking, investment management, lending, payments, and advisory services to consumers, businesses, and governments worldwide. JPM had approximately 250,000 employees across the United States with nearly $280 billion in total revenue last year. Its corporate headquarters are located at 383 Madison Avenue, New York, NY 10179.

11. At all times relevant to this lawsuit, Defendant sponsored, maintained, and managed the Plan. JPM is the Plan Administrator. Recently filed public documents show the Plan has nearly 155,000 active participants as of December 31, 2024. The Plan is an employee benefit

3

plan subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1003(a).

## JURISDICTION AND VENUE

12.     The Court has subject matter jurisdiction pursuant to 29 U.S.C. §1132(e)(1) and 28 U.S.C. § 1331, as this suit seeks relief under ERISA, a federal statute. It also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs.

13.     This Court has personal jurisdiction over Defendant because it is registered and headquartered in this District, and Plaintiff's claims and the claims of all others similarly situated arise from the acts and omissions of Defendant with respect to its activities and conduct concerning Plaintiff and the Class in the State of New York.

14.     Venue is proper in this District under 28 U.S.C. § 1132(e)(2) because this is the District in which Defendant has its principal place of business and where a substantial portion of the statutory breach took place. Additionally, Defendant conducts business and can be found in this District.

## FACTUAL BACKGROUND

### I. DEFENDANT'S TOBACCO SURCHARGE VIOLATES ERISA'S ANTI DISCRIMINATION RULE.

15.     To expand access to affordable health insurance coverage, the Affordable Care Act ("ACA") amended ERISA to prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use.

16.     Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan

4

as a dependent of the individual." 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

17. Defendant's tobacco surcharge violates this provision. Plaintiff and all others similarly situated were required to pay an additional premium or contribution per year based on a "health status-related factor" — their use of tobacco products. Plaintiff, and all others similarly situated, were forced to pay the tobacco surcharge to remain insured under the Plan.

18. Specifically, Defendant imposes an unlawful tobacco surcharge on employees and their beneficiaries (*e.g.*, spouses/domestic partners) who are enrolled in the Plan and have used tobacco products within the last 12 months.

19. All U.S. benefits-eligible employees (and their covered spouses/domestic partners, where applicable) who use tobacco pay higher rates under the following programs in the JPM Plan: (1) Medical Insurance Program; (2) Long-Term Disability Program; (3) Supplemental Term Life Insurance Program; and (4) individual disability insurance programs.

20. If JPM employees use tobacco, they pay an additional $80 per month (or $960 per year) under the Medical Plan. If the employee's covered spouse/domestic partner also uses tobacco, they will pay an additional $80 per month (or $960 per year) under the Medical Plan If both the employee and the covered spouse/domestic partner indicate they are tobacco users, the surcharge would be $160 per month (or $1,920 per year).

21. Under the JPM Medical Plan, a "tobacco user" (for a plan year) is any person who has used any type of tobacco products (*i.e.*, cigarettes, cigars, chewing tobacco, snuff or a pipe) regardless of the frequency or location (this includes daily, occasionally, socially, at home only, etc.) in the 12 months preceding January 1 of the plan year.

22. When employees enroll as newly eligible employees or during a subsequent annual enrollment period in the JPM Medical Plan, he or she needs to declare a non-tobacco user/tobacco user status for themselves and for their covered spouse/domestic partner.

23. The status they report remains in effect for the calendar year no matter what.

24. Only after employees (and/or their covered spouse/domestic partner) have been tobacco-free for 12 months (as of January 1 each year) or completed the Quit 4 Life Tobacco Cessation Program by the applicable deadline (as part of the annual benefits enrollment process), will they potentially be eligible for lower non-tobacco user rates beginning January 1 of the following year. In other words, any relief from the tobacco surcharge is only prospective.

25. If employees become eligible for benefits coverage before September 1, they will be assigned non-tobacco user rates for the current calendar year for themselves and their covered spouse/domestic partner even if they declare that they and their spouse/domestic partner are tobacco users.

26. Although new hires are automatically assigned non-tobacco rates for their first calendar year, this "first-year waiver," which dates back at least to 2020 for the tobacco surcharge program illustrates: (1) that JPM can administratively waive surcharges when it chooses; (2) that JPM grants grace to new hires but denies it to long-term employees who quit smoking or attend the tobacco cessation program mid-year; (3) that the selective treatment of employees undermines claims that the surcharge structure is uniformly applied; and (4) that there is an inference that refusal to refund is a revenue choice, not an administrative necessity.

27. Employees are able to receive more information regarding the opportunity to update their tobacco user status during the annual benefits enrollment period by accessing the appropriate website.

28. Under this tobacco surcharge program, Plaintiff paid $2,000 in tobacco surcharges, starting on January 1, 2021, and continuing through January 2023, or for 25 months at $80 a month.

29. During this period, Defendant controlled the tobacco surcharge, including

6

determining which participants were charged and by withholding the tobacco surcharge from a participant's paycheck. Rather than placing these funds in a trust account, Defendant retained the amounts collected as part of its own assets.

30. The Plan offered by Defendant requires individuals to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any tobacco use and fails to meet the safe harbor exception.

## II. DEFENDANT CANNOT AVAIL ITSELF OF ERISA'S SAFE HARBOR FOR WELLNESS PROGRAMS.

### A. Lack of Reasonable Alternative Standard.

31. Defendant failed to provide a compliant wellness program for tobacco-using participants. As discussed further below, to qualify as a compliant wellness program under ERISA, an employer must offer a "reasonable alternative standard" for participants who cannot meet the initial health standard. In this case, being tobacco-free.

32. The standard is intended to ensure that participants have an opportunity to avoid surcharges, such as tobacco-related premiums, by participating in wellness programs like smoking cessation programs. Additionally, employees must receive the *full reward* once they meet the alternative standard. To be clear, there must be a way for participants to avoid the surcharge for the full plan year, including retroactively once they complete the tobacco cessation program.

33. ERISA offers a limited exception to its general rules by providing safe harbor for certain wellness programs. *See* 29 U.S.C. § 1182(b)(2)(B).

34. This narrow exception means employers can offer incentives to plan participants, such as premium discounts, rebates, or adjustments to cost-sharing, in exchange for their participation in these wellness programs. One way for plans to take advantage of the safe harbor provisions while charging participants additional surcharges is to offer programs designed to increase the well-being of the person such as, for example, smoking cessation program. The regulations covering health-contingent wellness programs require that the wellness programs,

7

like smoking cessation programs, satisfy certain criteria. *See* 78 FR 33158, 33159.

35. A plan seeking to qualify for the wellness program exception must offer a program that is "reasonable." The Department of Labor has issued regulations regarding what "reasonable" health-contingent programs must include.

36. To qualify under ERISA, there are three basic requirements: <u>First</u>, the program must have a realistic chance of improving health or preventing disease for participants, and cannot be excessively difficult, discriminatory based on health, or use questionable methods; <u>second</u>, everyone in a similar situation must have a chance to earn the "full reward" — in other words, the program must offer a reasonable alternative or waiver for those who cannot meet the initial health standard; <u>third</u>, the program must be disclosed "in *all* plan materials" describing the reward and explaining the availability of a reasonable alternative standard or waiver, and must also provide the ability to request an accommodation to the standard through one's personal physician. 29 C.F.R. § 2590.702(f)(4) (emphasis added).

37. These regulations "set forth criteria for an *affirmative defense* that can be used by plans and issuers in response to a claim that the plan or issuer discriminated under the [] nondiscrimination provisions." *See Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33160 (June 3, 2013) (emphasis added).

38. Crucially, *every one* of the safe harbor requirements "must be satisfied in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*

39. Defendant's tobacco surcharge program did not and does not satisfy the requirements that it provide a reasonable alternative standard, or that it provide notice of a reasonable and alternative standard. As a result, it cannot meet the elements of this affirmative defense.

40. While JPM offers the "Quit 4 Life" program as part of its wellness initiative, the Plan materials do not sufficiently explain the process by which employees and their spouses/domestic partners can avoid or remove the surcharge retroactively. Specifically, the guide

8

mentions that participants can complete the Quit 4 Life program but the surcharge will be removed only on a *prospective* basis starting the next Plan year, not for the entire plan year, as required.

41. This means participants who become tobacco-free part-way through the plan year or who complete a smoking cessation program can avoid future surcharges starting January of the following year, but are not retroactively reimbursed for any surcharges already paid in that Plan year. This practice violates ERISA's requirements that participants receive the "full reward" after satisfying the alternative standard.

42. Defendant, during the applicable limitations period, maintained exclusive control over the tobacco surcharge, including determinations as to which participants were and continue to be required to pay the surcharge. Defendant withholds the amount of the surcharge from participants' paychecks and deposits these funds into its own accounts, rather than into a trust account.

43. By depositing these ill-gotten gains into its own accounts, Defendant has dealt with assets of the Plan for its own interests, in violation of ERISA. Defendant has a fiduciary responsibility to ensure that these funds are used to support coverage for its employees' health insurance. Instead, by charging and collecting this unlawful surcharge, Defendant has increased its own bottom line allowing it to unjustly realize financial benefits it would not have otherwise obtained without imposing these surcharges, in violation of ERISA's fiduciary duty standards.

44. Defendant's failure to adequately disclose this information in all Plan materials deprives employees of the ability to make informed decisions about their health and wellness benefits and imposes an unlawful financial burden on employees who could otherwise meet the requirements of the alternative standard. Accordingly, the tobacco surcharge wellness program fails to comply with regulatory requirements to be a non-discriminatory wellness program under ERISA § 702.

45. Plaintiff did not complete the tobacco cessation program because he was not adequately notified of the program. Even if Plaintiff had received the necessary compliant notifications of the reasonable alternative standard (which he did not), he would have not received

the full reward of being reimbursed the full tobacco surcharge for the entire Plan year as the regulations require.

46. Because the Plan fails to provide a compliant reasonable alternative standard that allows participants to receive the "full reward"— avoiding the surcharge for the entire plan year — Defendant's wellness program fails to provide reasonable alternative standards and fails to comply with the requirement to make available the "full reward" to participants.

47. In other words, even though Defendant offers a quit-tobacco program, employees who complete it can only avoid the surcharge on a go-forward basis and are not eligible for retroactive reimbursement for surcharges already paid during the plan year. On this basis alone, the Plan violates ERISA's anti-discrimination provisions.

### B. Lack of Notice of Reasonable Alternative Standard.

48. Additionally, ERISA requires that employers clearly communicate the availability of reasonable alternative standards to all employees in all plan materials. Defendant's plan documents fail to adequately communicate this option or only provide partial notice by specifying that quitting tobacco can avoid the surcharge only prospectively, in violation of ERISA's notification requirements.

49. The regulations require plans and issuers to "disclose *in all plan materials* describing the terms of an outcome-based wellness program, and in any disclosure that an individual did not satisfy an initial outcome-based standard, the availability of a reasonable alternative standard to qualify for the reward (and, if applicable, the possibility of waiver of the otherwise applicable standard), *including contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated*." 29 C.F.R. § 2590.702(f)(3)(v) (emphasis added); see also 42 U.S.C. § 300gg-4(j)(3)(E).

50. Defendant does not include adequate notification in *all* Plan materials. While the Benefits Guide contains references to materials describing the "Quit 4 Life" program, it fails to notify participants of the availability of a reasonable alternative standard that would eliminate the

10

tobacco surcharge for the entire plan year, in violation of ERISA, and does not mention that the reasonable alternative standard can be met through a personal physician accommodation.

51. Plan materials do not inform employees that completing the program will entitle them to the full reward of avoiding the surcharge for the entire year. Instead, employees are led to believe that the surcharge can only be avoided prospectively, which discourages participation and violates ERISA's requirement that participants be clearly informed of their ability to avoid surcharges through reasonable alternative standards.

52. For instance, JPM distributed plan materials entitled: "2023 Enrollment Bulletin." Yet, although it mentions the Quit 4 Life tobacco cessation program and how to find out more information, it does not provide any information that (1) tobacco surcharge reimbursement will be paid retroactively for all surcharges imposed in the current Plan year when the tobacco cessation program is completed, or (2) that if, due to a medical condition or it is medically inadvisable for an employee to achieve the standards of the tobacco surcharge program, those standards may be avoided by providing a physician recommendation.

53. Similarly, JPM has distributed a flier every year entitled: "Highlights of the [Year] JPMorgan Chase U.S. Benefits Program," in a section entitled "Higher Rates for Tobacco Users for Certain Benefits Coverages," which discusses the tobacco surcharge program in depth for all medical, life, and disability programs, but fails to provide information about all surcharges being retroactively reimbursed in a Plan Year or that the surcharge can be potentially avoided with a physician's recommendation for accommodation.

54. Additionally, to be deemed a lawful wellness program, the regulations provide sample notification language. 29 C.F.R. § 2590.702(f)(6). Paragraph (f)(6) states:

> Your health plan is committed to helping you achieve your best health. Rewards for participating in a wellness program are available to all employees. If you think you might be unable to meet a standard for a reward under this wellness program, you might qualify for an opportunity to earn the same reward by different means. Contact us at [insert contact information] and we will work with you (and, if you wish, with your doctor) to find a wellness program with the same reward that is right for you in light of your health status.

29 C.F.R. § 2590.702(f)(6).

55. Much of this language, including the ability to "earn the same reward by different means" and the fact that the JPM Plan will "work with you . . . [and] with your doctor," is missing from the JPM Plan's materials distributed to the Plan's participants.

56. "[A] plan disclosure that references a premium differential based on tobacco use . . . must include this disclosure." 78 Fed. Reg. 33158-01, 33166.

57. None of the Plan documents provided to Plaintiff or the Class in a written form, or digitally on the computer, disclose a means by which a participant could either receive the "full reward" for the tobacco surcharge for the entire Plan year, or a manner to prove a recommendations from an individual's personal physician regarding how their tobacco use may be accommodated.

58. As a result, all of the JPM's Plan materials, as required by the wellness plan safe-harbor, do not provide the required notice of the scope and nature of the tobacco surcharge program available to JPM employees.

59. Because JPM has not complied with the requirement that it provide notice of the availability and scope of the reasonable alternative standard in *all of the Plan's communications* by which a Plan participant could avoid the tobacco surcharge (including through a recommendation by a personal physician) and receive a full reward, JPM's tobacco surcharge program is unlawful and the surcharge assessed to the Plaintiff and Class must be returned to them for the entire Class Period.

## CLASS ACTION ALLEGATIONS

60. 29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

61. 29 U.S.C. § 1132(a)(3) authorizes any participant or beneficiary of the Plan to bring

an action for statutory violations of ERISA for "appropriate equitable relief."

62. In acting in this representative capacity, Plaintiff seeks to certify this action as a class action on behalf of all participants and beneficiaries of the Plan who were subject to the unlawful JPM tobacco surcharge. Plaintiff seeks to certify, and to be appointed as representatives of, the following Class:

> All persons in the United States who paid JPMorgan Chase's tobacco surcharge in connection with the JPMorgan Chase Healthcare and Insurance Program for Active Employees at any time from six years prior to the filing of the Complaint to the present.

63. Excluded from the Class are the Court and its officers, employees and relatives; JPM and its subsidiaries, officers, directors, and the Plans' fiduciaries; and governmental entities.

64. The Class includes tens of thousands of members and is so large that joinder of all its members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

65. There are questions of law and fact common to this Class pursuant to Federal Rule of Civil Procedure 23(a)(2), because Defendants owed fiduciary and other duties to the Plan and its participants and failed to take the actions alleged as to the Plans and as to any individual participant. Common questions of law and fact include but are not limited to the following:

   a. Whether JPM's tobacco surcharge discriminates against Plan participants based on a health status-related factor;

   b. Whether JPM's tobacco surcharge program qualifies for statutory safe harbor protection as a compliant wellness program;

   c. Whether JPM can meet every element of its statutory affirmative defense for operating a compliant wellness program;

   d. Whether all of JPM Plan materials describing the tobacco surcharge gave notice of a reasonable alternative standard by which a plan participant may receive the full reward; and

   e. Whether JPM, in its discretionary fiduciary capacity of managing the JPM Plan, breached its fiduciary duties with respect to its collection and retention of the tobacco surcharge.

13

66. Plaintiff's claims are typical of the claims of the pertinent class pursuant to Federal Rule of Civil Procedure 23(a)(3), because all class claims arise from the same course of conduct by JPM – its collection of an unlawful tobacco surcharge – and are based on the same legal theories.

67. Plaintiff will adequately represent the Class pursuant to Federal Rule of Civil Procedure 23(a)(4), because she was a participant in the Plan during the Class period, has no interest that conflict with the Class, is committed to the vigorous representation of the Class, and has engaged experienced and competent lawyers to represent the Class.

68. Certification is appropriate under Federal Rule of Civil Procedure 23(b)(1), because prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of (1) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant concerning its discharge of fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a), and (2) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

69. Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

70. Plaintiff's attorneys have substantial and varied experience in complex ERISA and class action litigation and will adequately represent the Class.

71. Plaintiff's claims arise from fiduciary breaches as to the Plan in its entirety and does not involve mismanagement of individual accounts.

72. The claims asserted on behalf of the Plan in this case fall outside the scope of any exhaustion language in the individual participants' Plan.

73. Exhaustion is intended to serve as an administrative procedure for participants and beneficiaries whose claims have been denied and not where a participant or beneficiary brings suit on behalf of a Plan for statutory violations and breaches of fiduciary duty.

74. Under ERISA, an individual "participant" or "beneficiary" is distinct from an ERISA Plan. A participant's obligation – such as a requirement to exhaust administrative remedies – does not, by itself, bind the Plan.

75. Moreover, any administrative appeal would be futile because the entity hearing the appeal (the JPM Plan Administrator) is the same Plan Administrator that made the decisions that are at issue in this lawsuit.

76. Policy supporting exhaustion of administrative remedies in certain circumstances – that the Court should review and where appropriate defer to a Plan administrator's decision – does not exist here because courts will not defer to Plan administrator's legal analysis and interpretation.

**FIRST CLAIM FOR RELIEF**
**ERISA Statutory Violation – Unlawful Surcharge**
**ERISA Section 502(a)(3)**
**Failure to Provide a Reasonable Alternative Standard**

77. Plaintiff restates the above allegations as if fully set forth herein.

78. To enroll in the JPM Plan, Plaintiff, class members, and their spouses/domestic partners were required to pay a tobacco surcharge in the amount of $960 per Plan year.

79. JPM's tobacco surcharge program is not and was not a permissible wellness program,

because it did not provide for a reasonable alternative standard, in that:

    a. The JPM Plan did not allow participants an alternative means to avoid the tobacco surcharge by enrolling in a compliant smoking cessation program;

    b. Even a tobacco user who enrolled in the smoking cessation program would still have the surcharge deducted from their pay only going forward, not until the following January 1st;

    c. A participant who completed the alternative standard during a given plan year would not be eligible to receive the "full reward" of the tobacco surcharge program, that being a $960 reduction per year in premium costs to maintain medical coverage; and

    d. Because a participant could not receive the "full reward," the plan did not provide for a reasonable alternative standard.

80. JPM cannot and did not meet every element of its affirmative defense for operating a lawful, compliant wellness program, and is therefore not entitled to statutory safe harbor protection.

81. JPM's tobacco surcharge has discriminated against, and continues to discriminate against, Plan participants based on a health status-related factor and it is assessing premiums or contributions, in violation of 29 U.S.C. § 1182(b).

82. 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiff and class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

83. Plaintiffs and class members were required to pay an illegal fee, and JPM collected that fee from them in violation of the law. Equity requires that those funds be returned.

84. Equity also requires that the JPM Plan be operated in conformance with the statutory safe-harbor for wellness programs.

<b><u>SECOND CLAIM FOR RELIEF</u></b><br><b>ERISA Statutory Violation – Unlawful Surcharge</b><br><b>ERISA Section 502(a)(3)</b><br><b>Failure to Give Required Notice</b>

85. Plaintiff restates the above allegations as if fully set forth herein.

86. To enroll in the JPM Plan, Plaintiff and Class members were required to pay a tobacco surcharge in the amount of $960 per year.

87. JPM's tobacco surcharge program is not and was not a permissible wellness program, because JPM did not give the statutorily-required notice on the scope and nature of the reasonable alternative standard, in that none of the plan documents provided to Plaintiff or Class members in a written form, or digitally on the computer, provided a means by which a participant could receive the full retroactive reward for the tobacco surcharge for the plan year or provided a statement that recommendations of an individual's personal physician regarding their tobacco use may be accommodated.

88. JPM therefore cannot meet every element of its affirmative defense for operating a lawful, compliant wellness program, and is therefore not entitled to statutory safe harbor protection.

89. JPM's tobacco surcharge has discriminated against, and continues to discriminate against, Plan participants based on a health status-related factor and it is assessing premiums or contributions, in violation of 29 U.S.C. § 1182(b).

90. 29 U.S.C. § 1182(b) is a statutory provision of ERISA that Plaintiff and Class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

91. Plaintiff and Class members were required to pay an illegal surcharge, and JPM collected that fee from them in violation of the law. Equity requires that those funds be returned to Plaintiff and Class members.

92. Equity also requires that the JPM Plan be operated in conformance with the statutory safe-harbor for wellness programs.

## THIRD CLAIM FOR RELIEF
**ERISA Breach of Fiduciary Duty**
**ERISA Section 502(a)(2)**
**Breach of Duty of Loyalty**

93. Plaintiff restates the above allegations as if fully set forth herein.

94. At all times relevant to this lawsuit, JPM was the administrator of the JPM Plan within the meaning of 29 U.S.C. § 1002(16), and was a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A), in that it exercised discretionary authority and discretionary control respecting management of the JPM Plan and disposition of its assets by holding in trust the funds collected from the tobacco surcharge, and had discretionary authority and discretionary responsibility in the administration of the Plan.

95. JPM breached its fiduciary duties by assessing and collecting the tobacco surcharge in violation of the law, as the receipt of additional funds reduced its own costs associated with funding the plan and forestalled its own obligations to make contributions thereto.

96. As a result of the imposition of the tobacco surcharge, JPM enriched itself at the expense of the JPM Plan, thereby receiving a windfall.

97. JPM breached its fiduciary duties under ERISA in that it failed to act solely in the interest of the participants and beneficiaries of the JPM Plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA. *See* 29 U.S.C. § 1104(a)(1)(A).

98. As a result of these breaches, and pursuant to 29 U.S.C. § 1109, JPM is liable to make good to the plan all losses to the plan resulting from its breaches, disgorge all unjust enrichment and ill-gotten profits, and to restore to the plan and/or a constructive trust all profits it acquired through its violations alleged herein and which it made through use of assets of the plan, and for such other equitable or remedial relief as is proper.

99. Plaintiff is authorized to bring this action on behalf of the plan pursuant to 29 U.S.C. § 1132(a)(2).

**WHEREFORE**, Plaintiff requests the Court enter judgment, both individually and on behalf of all participants and beneficiaries in the JPM Plan, and award the following relief:

a. certifying a class action for Plaintiff's ERISA claims and appointing Walcheske & Luzi, LLC, and Chirinos Law Firm PLLC, as Class counsel;

b. requiring JPM to reimburse all participants who paid the tobacco surcharges from January 13, 2020, through the present plus interest;

c. requiring JPM to revise any tobacco surcharge program it intends to maintain to comply with ERISA § 702, 29 U.S.C. § 1182, and its implementing regulations;

d. enjoining JPM from collecting tobacco surcharges until JPM revises its tobacco surcharge program to comply with ERISA § 702, 29 U.S.C. § 1182, and its implementing regulations;

e. imposing a constructive trust on profits received by JPM as a result of fiduciary breaches committed by it or for which it is liable, upon which Plaintiff and members of the Class can make claims for benefits;

f. requiring JPM to disgorge all unjust enrichment or profits received as a result of fiduciary breaches committed by it with regard to the tobacco surcharge program for which it is liable;

g. ordering JPM to provide all accountings necessary to determine the amounts JPM must make good to the JPM Plan and to plan participants and beneficiaries;

h. imposing the equitable remedy of surcharge and requiring JPM to return all funds it derived from the illegal tobacco surcharge program;

i. awarding Plaintiff's counsel attorneys' fees and costs consistent with ERISA's fee and cost shifting provisions for the costs of prosecuting this action; and

j. any further relief that the Court may deem just and equitable.

Date: January 13, 2026                              Respectfully submitted,

                                                    */s/ Nicole M. Cvercko*
                                                    Nicole M. Cvercko, Bar No. 6050629

**CHIRINOS LAW FIRM, PLLC**
11 Broadway, Suite 615
New York, NY 10004
Telephone: 646-559-9952
Email: ncvercko@gmail.com

**CHIRINOS LAW FIRM, PLLC**
Tulio D. Chirinos (*pro hac vice* motion forthcoming)
20283 State Road 7, Suite 592
Boca Raton, FL 33498
Telephone: 561-299-6334
Email: tchirinos@chirinoslawfirm.com

**WALCHESKE & LUZI, LLC**
Paul M. Secunda (*pro hac vice* motion forthcoming)
Wisconsin Bar No. 1074127
235 N. Executive Dr., Suite 240
Brookfield, Wisconsin 53005
Telephone: (414) 828-2372
Email: psecunda@walcheskeluzi.com

**BLOOM LEGAL LLC**
Seth J. Bloom
Texas Bar No. 24094426
825 Girod Street, Suite A
New Orleans, Louisiana 70113
Telephone: (504) 599-9997
Email: sjb@bloomlegal.com

*Attorneys for Plaintiff and Proposed Class*